■ In the Matter of MARY F. GRANT, as Conservatee. DOROTHY M. FORDYCE, Appellant; LESTER H. CHASE et al., Respondent. — In a proceeding to settle the final account of Lester H. Chase, a former conservator of the property of Mary Fordyce Grant, conservatee, claimant objectant Dorothy M. Fordyce appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Nassau County (Meade, J.), dated June 26, 1981, as, after a hearing, disallowed certain claims. The appeal from the judgment dated June 26, 1981 brings up for review so much of a resettled judgment of the same court, dated March 8, 1982, as disallowed certain claims, as recited in the sixteenth decretal paragraph. Appeal from judgment dated June 26, 1981, dismissed, without costs or disbursements. Said judgment was superseded by the resettled judgment dated March 8, 1982. Resettled judgment dated March 8, 1982 reversed insofar as reviewed, without costs or disbursements, so much of the judgment dated June 26, 1981 is vacated accordingly, the sixteenth decretal paragraph is deleted, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith. This is a proceeding for the judicial settlement of the account of Lester H. Chase, former conservator of

the property of Mary Fordyce Grant. The claimant objectant, Dorothy M. Fordyce, is the natural mother of the conservatee. On a number of occasions since 1976, the conservatee has been hospitalized, as a voluntary and involuntary patient, in various public and private mental hospitals. On April 4, 1979, Lester H. Chase, an attorney, and a friend of the conservatee's mother, was appointed conservator of the estate of Mary Fordyce Grant. The estate included the conservatee's interest in a family partnership managed by her mother, who is an attorney. In late April or May of 1979, Chase was retained to represent the conservatee's mother with regard to the sale of certain property owned by the family partnership. Sometime thereafter the conservatee moved from New York to Connecticut where her children resided with their father, the former husband of the conservatee. In June, 1980, Chase sought permission to resign as conservator and to file a final account, claiming, *inter alia,* that a conflict of interest existed in his representation of the conservatee's mother at the sale of the partnership property and his position as conservator. In August of 1980, Ernest T. Bartol was appointed guardian ad litem for the conservatee. After a contested hearing on the account proceeding, the court allowed the claims for hospital and medical services rendered to the conservatee prior to Chase's appointment as conservator, but disallowed the claims for medical services incurred after his appointment and the mother's claims for expenses connected with the conservatee's move to Connecticut, including nursing care, and for the rent and the costs of utilities in the Connecticut residence. The court found that all of the disallowed expenses were for services rendered to the conservatee at the request of the mother and not at the request of the conservator and that when the conservator had indicated that there were no funds in the estate for these services, the mother felt that these services should be rendered to the conservatee and she would pay for them if there were no funds in the estate. The court also fixed the conservatee's interest in the family partnership, determined that there was a balance of approximately $19,000 due the conservatee's estate and directed Robert D. Fordyce, the conservatee's natural father and successor conservator, to collect said sum from the mother. On appeal, the mother contends, *inter alia,* that all the disallowed claims should be allowed, or in the alternative, that the matter be remitted to the trial court for a determination of the reasonable value of the services rendered on behalf of the conservatee. We agree to the extent that the proceeding should be remitted for a hearing on the disallowed claims. All of the disallowed claims are for necessaries. They represent either obligations incurred in response to emergencies resulting from the conservatee's conduct, or expenditures made with the conservatee's consent on the advice of her doctors and attorneys. It was the duty of Chase, as conservator, to provide for the maintenance, support and personal well-being of the conservatee to the extent of the net estate available (Mental Hygiene Law, § 77.21). However, Chase's testimony that he regarded all hospital and medical care as a "family matter" and left such decisions to the conservatee's mother, indicates that Chase, in fact, delegated his statutory duty to the mother. Under these circumstances, the mother's interference was justified (see 50 NY Jur, Restitution and Implied Contracts, § 34, p 227). Further, it is clear from the record that payments by the mother were made with the expectation that she would be reimbursed for them (see, generally, Wade, Restitution for Benefits Conferred Without Request, 19 Vanderbilt L Rev 1183; 2 Palmer, Law of Restitution, § 10.4; Restatement, Restitution, §§ 113-116). Nevertheless, a hearing is required with regard to the disallowed claims since the record does not contain sufficient facts to determine the exact value of certain claims, whether said claims were reasonable and commensurate with the means of the conservatee, and to what extent the disallowed medical claims may be covered by any type of medical insurance. Damiani, J. P., O'Connor, Rubin and Boyers, JJ., concur.